**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cleo Page,<br><br>    Petitioner,<br><br>v.<br><br>Felipe Martinez,<br><br>    Respondent. | No. CV-17-00121-TUC-EJM<br><br>**ORDER** |

      Pending before the Court is an Amended Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 by Cleo Page ("Petitioner"). (Doc. 7). Petitioner alleges that pursuant to *Mathis v. United States*, 135 S. Ct. 2243 (2016), his prior conviction for possession of a controlled substance with intent to sell (cocaine) under Nev. Rev. Stat. § 453.337 is no longer a predicate offense exposing him to the sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1 because § 453.337 "does not qualify as a controlled substance offense under the categorical approach" in light of *Mathis*. (Doc. 7 at 4). Petitioner requests this Court to order his immediate release from custody and direct the sentencing court to order a hearing to determine if any further relief is warranted. *Id.* at 9–10.

      Respondent argues that the petition should be denied for several reasons. (Doc. 18). First, Respondent argues that Petitioner's § 2241 petition is actually a disguised 28 U.S.C. § 2255 petition that must be brought in the court of conviction because Petitioner is challenging his original sentence. (Doc. 18 at 4). Second, because Petitioner previously

filed a § 2255 petition in the court of conviction, this disguised § 2241 petition is actually a second or successive § 2255 petition that must first be authorized by the Ninth Circuit prior to filing it with the sentencing court. (Doc. 18 at 4). Finally, Respondent argues that the petition does not fall within the narrow class of claims authorized under the "savings clause" of § 2255. (Doc. 18 at 6). Respondent bases this argument on the assertion that Petitioner did not (and still does not) lack an unobstructed procedural shot to present his claims for relief and that the collateral attack on his prior sentencing enhancement does not amount to a claim of actual innocence.

For the reasons discussed below, the Court finds that Petitioner did not lack an unobstructed procedural shot to present his claim for relief prior to the Supreme Court's decision in *Mathis*. *Mathis* did not announce any new rule of law. Petitioner's claim that his underlying drug offense was broader than the generic offense and therefore unable to be used as a predicate for a career-offender sentencing enhancement existed at the time of his original § 2255 petition. Therefore, the Court will dismiss the petition.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Proceedings in the Central District of California**

The history of Petitioner's underlying criminal offense is well summarized in the District Court for the Central District of California's denial of Petitioner's first § 2255 petition:

> On June 6, 2002, a federal grand jury returned an eight-count indictment against Petitioner and eleven co-defendants, charging them with crimes committed in connection to violations of 21 U.S.C. §§ 846, 841(a)(1), conspiracy to possess with intent to distribute and distribution of cocaine base in the form of crack cocaine. Petitioner pleaded guilty to the conspiracy count (count one) of the indictment on January 17, 2003.
>
> On March 26, 2003, the United States Probation Office released its Presentence Investigation Report ("PSR") to the parties. The PSR identified two prior felony convictions: (1) on January 26, 1996, for possession of a controlled substance with intent to sell in the Nevada 8th Judicial District, Case Number C121157B, for which Petitioner was sentenced to three years in state prison; and (2) on August 20, 1998, for infliction of injury on spouse in the Riverside County Superior Court, Case Number RIF76200, for which he was sentenced to

> three years in state prison. Although Petitioner's offense level based on the amount of crack cocaine was 36, the PSR recommended the offense level of 37, applying the level for a career offender under United States Sentencing Guideline § 4B1.1. After applying a three-level reduction for acceptance of responsibility, the PSR determined the applicable sentencing guideline range was 262–327 months.
>
> On July 14, 2003, this Court sentenced Petitioner to a 295-month term of imprisonment, followed by a term of supervised release of five years. Petitioner's 295-month term of imprisonment, which was in the middle of the guideline sentencing range, was partly the result of his career offender status. Petitioner subsequently appealed his conviction and the Ninth Circuit affirmed the judgment. *See United States v. Petitioner*, 112 F. App'x 568 (9th Cir. 2004).
>
> On January 21, 2011, Petitioner filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense, Pursuant to 18 U.S.C. § 3582. After the Government opposed, the Court held a hearing and denied the Motion for Retroactive Application on May 23, 2011.

*Petitioner v. United States*, Case No. 5:13-cv-01502-VAP (C.D. Cal.) Doc. 8 at 2–3 ("C.D. Cal. Doc.") (internal docket citations omitted).

On August 22, 2013, Petitioner filed a timely § 2255 motion in the District Court for the Central District of California in which he alleged that, in light of the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), his prior California conviction for violation of California Penal Code § 273.5(a) for Infliction of Injury on a Spouse was no longer a prior violent crime that qualified him as a career offender under U.S.S.G. § 4B1.1. (C.D. Cal. Doc. 1). Petitioner based this claim on the assertion that the California statute was categorically broader than the generic offense and requested that the court vacate his sentence and resentence him without the career offender enhancement. (C.D. Cal. Doc. 1 at 4–5). The district court denied Petitioner's petition on December 23, 2013. (C.D. Cal. Doc. 8). The court reasoned that because the Ninth Circuit had consistently held that a conviction under § 273.5(a) of the California Penal Code qualified as a crime of violence and warranted sentencing enhancement under the U.S.S.G., *Descamps* did not apply to Petitioner's case. (C.D. Cal. Doc. 8 at 7:9–27). Petitioner did not appeal that decision. *Petitioner v. United States*, Case No. 5:16-cv-01371-VAP (C.D.

Cal.) Doc. 1 at 3 ("C.D. Cal. II Doc.") (checking the box for "no" to the question of whether Petitioner appealed the 2014 denial of his first petition under § 2255).

On June 24, 2016, Petitioner filed another § 2255 motion in the Central District of California. (C.D. Cal. II Doc. 1). Petitioner once again challenged the application of the career offender enhancement he received in his 2003 sentencing, this time claiming that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), made his California conviction for Infliction of Injury on a Spouse no longer a crime of violence under U.S.S.G. § 4B1.1. (C.D. Cal. II Doc. 1 at 5). Petitioner therefore claimed that he was ineligible to receive the career offender enhancement and requested that the court vacate his sentence and resentence him without the enhancement. (C.D. Cal. II Doc. 1 at 13). The Government opposed the petition. (C.D. Cal II Doc. 5). Petitioner subsequently wrote a letter to the court stating that he was voluntarily withdrawing the petition, which the court construed as a request for voluntary dismissal even though it was an improper communication. (C.D. Cal. II Docs. 6, 7). The court ordered Petitioner to show cause in writing for the dismissal. (C.D. Cal. II Doc. 8). Without any further action taken by Petitioner, the court dismissed the case without prejudice for failure to prosecute. (C.D. Cal. II Doc. 10).

### B. The Instant Petition

On April 27, 2017, Petitioner filed his pro se Amended Petition for Writ of Habeas Corpus pursuant to § 2241 in this Court, once again challenging the sentencing enhancement he received as a career offender. (Doc. 7). The crux of Petitioner's argument is that the Supreme Court's decision in *Mathis* makes his prior state "conviction for possession of a controlled substance with intent to sell (cocaine) under Nev. Rev. Stat. § 453.337 no longer" a predicate offense under U.S.S.G. § 4B1.1. *Id.* at 4. Petitioner argues that his conviction under § 453.337 does not qualify as a controlled substance offense under the categorical approach because the statute "criminalizes a broader range of conduct than a controlled substance offense as defined in the federal guidelines." *Id.*

Petitioner's case was originally assigned to United States District Court Judge David

C. Bury. In an Order dated July 11, 2017, Judge Bury directed Respondent to answer the petition within 20 days and referred the case to the undersigned for further proceedings and a Report and Recommendation. (Doc. 8). All parties then voluntarily consented to magistrate judge jurisdiction and to have the undersigned conduct all further proceedings in this case. (Doc. 14).

Respondent filed a Response to the petition on September 1, 2017. (Doc. 18). Respondent argues that the petition is meritless for the following reasons: (1) Petitioner's claim is an improper § 2241 filing that should have been made under § 2255; (2) since this is a subsequent § 2255 filing, Petitioner must first seek the Ninth Circuit's approval to proceed with this claim; and (3) the savings clause of § 2255 does not apply to Petitioner's claim because he cannot show that he is actually innocent or that he did not have an unobstructed procedural shot at raising this claim during his first § 2255 petition. (Doc. 18).

Petitioner filed a Reply on November 3, 2017. (Doc. 25). Petitioner admits that *Mathis* did not announce a new rule of constitutional law, but argues that *Mathis* clarified a statutory interpretation and effected a material change in the law that was not previously available to Petitioner. Petitioner therefore argues that he did not have an unobstructed procedural shot to present his claim and that this Court thus has jurisdiction to hear his § 2241 petition under the escape hatch.

**II. DISCUSSION**

**A. Jurisdiction**

"[I]n order to determine whether jurisdiction is proper, a court must first determine whether a habeas petition is filed pursuant to [28 U.S.C.] § 2241 or 2255 before proceeding to any other issue." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). A federal prisoner challenging the legality of a sentence must generally do so via a motion raised in the sentencing court pursuant to 28 U.S.C. § 2255. *Harrison v. Ollison*, 519 F.3d 952, 954 (9th Cir. 2008). By contrast, a prisoner who wishes to challenge the manner, location, or conditions of the execution of a sentence must bring a petition pursuant to 28 U.S.C. §

2241 in the custodial court. *Hernandez*, 204 F.3d at 864. A prisoner may not bring a second or successive petition under § 2255 without first obtaining certification from "a panel of the appropriate court of appeals." 28 U.S.C. § 2255(h); *Harrison*, 519 F.3d at 955. The restrictions on the availability of a § 2255 motion cannot be avoided through a petition under § 2241. *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006).

The one exception to the general rule against subsequent § 2255 petitions is what has been called the "escape hatch" or "savings clause" of § 2255. *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000). The escape hatch permits a federal prisoner to "file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'" *Stephens*, 464 F.3d at 897 (quoting *Hernandez*, 204 F.3d at 864–65). The Ninth Circuit has made clear that the ban on successive § 2255 petitions does not per se make § 2255 an inadequate or ineffective remedy for purposes of the escape hatch.[1] *Lorentsen*, 223 F.3d at 953; *see also United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997) (the escape hatch is a narrow doctrine to be used in limited circumstances).

A § 2241 petition meets the escape hatch criteria where a petitioner: (1) makes a claim of actual innocence; and (2) has not had an unobstructed procedural shot at presenting that claim. *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011). If a petition meets the escape hatch requirements, the petitioner may avoid the procedural prohibitions on the filing of second or successive petitions under § 2255. *See Ivy v. Pontesso*, 329 F.3d 1057, 1059–60 (9th Cir. 2003). Therefore, the Court must first make a threshold determination of whether Petitioner's claim satisfies the requirements of the escape hatch before reaching the claim's merits. For the following reasons, the Court finds that Petitioner has not satisfied his burden to demonstrate that the savings clause applies. Accordingly, the Court will dismiss the petition for lack of jurisdiction.

---

[1] A petitioner can only file a successive § 2255 petition if the appropriate circuit court certifies that the successive petition is based on: (1) newly discovered evidence which would establish by clear and convincing evidence that no reasonable fact finder would have found the petitioner guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h).

i. <u>Actual Innocence for Purposes of the "Escape Hatch"</u>

"To establish actual innocence for purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Alaimalo*, 645 F.3d at 1047 (internal quotations and citation omitted). The Ninth Circuit has held that "[a] petitioner is actually innocent when he was convicted for conduct not prohibited by law." *Id.* However, that court has "not yet resolved the question whether a petitioner may ever be actually innocent of a noncapital sentence for the purposes of qualifying for the escape hatch." *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012).

In *Marrero*, the court concluded it did not have jurisdiction of the § 2241 petition under the escape hatch because the petitioner was making a purely legal claim—that he was incorrectly treated as a career offender—"that had nothing to do with factual innocence." 682 F.3d at 1193. The court noted that "some of our sister circuits have recognized exceptions to the general rule that a petitioner cannot be actually innocent of a noncapital sentence under the escape hatch." *Id.* at 1194. Those exceptions include: (1) a petitioner may be actually innocent of a sentencing enhancement, and qualify for the escape hatch, if he was factually innocent of the crime that served as the predicate conviction for the enhancement; (2) a petitioner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible; and (3) a petitioner may be actually innocent of a sentencing enhancement if the sentence resulted from a constitutional violation. *Id.* at 1194–95. The *Marrero* court did not endorse any of these exceptions but noted the possibility that such a petitioner "may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible." *Id.* at 1194–95 (citing *Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011) and *Gilbert v. United States*, 640 F.3d 1239, 1323 (11th Cir. 2011)). Although the Ninth Circuit did not formally endorse that conclusion, the undersigned has previously found the Sixth and Seventh Circuits' conclusions on the issue persuasive. *See Terry v. Shartle*, 2017 WL 2240970, at *10–*11 (D. Ariz. May 23, 2017), *report and recommendation adopted*, 2017 WL 5151130 (D. Ariz. Nov. 7, 2017) (agreeing

with the decisions in *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) and *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016) that petitioners could successfully claim actual innocence for a possible error in applying a sentencing enhancement). In both *Brown* and *Hill*, the courts decided that a petitioner may utilize the escape hatch to challenge the misapplication of the career offender sentencing guideline where the petitioner was sentenced in the pre-*Booker* era when those guidelines were mandatory.[2] *See Brown*, 719 F.3d at 588; *Hill*, 836 F.3d at 599. Those courts reasoned that a misapplication of mandatory sentencing guidelines raises a fundamental fairness issue. *Brown*, 719 F.3d at 588; *Hill*, 836 F.3d at 599.

Here, the Court finds no reason to reevaluate the conclusion it reached in *Terry* that a claim of actual innocence may be predicated on a petitioner having been statutorily ineligible for a sentencing enhancement. The Ninth Circuit still has not ruled definitively on the issue and this Court stands by its previous analysis.[3] Petitioner contends that without the career offender enhancement he would not have been eligible to receive the 295-month sentence and instead would have only been exposed to a sentencing range between 235 to 293 months imprisonment. Petitioner further contends that since he received a sentence in the middle of the mandatory guidelines in 2003, it is likely that he would have received a similar middle-of-the-guideline sentence under the correct sentencing enhancement. While this Court does not begin to suppose what the sentencing court would or would not have done in that instance, the Court does agree with Petitioner that a 295-month sentence would have been outside of the sentencing range he was eligible to receive without the career offender enhancement.[4] Given this fact and based on the undersigned's reasoning in *Terry*,

---

[2] Respondent argues that Petitioner cannot claim that he received a sentence for which he was statutorily ineligible when his ultimate sentence was well within the lifetime statutory maximum for his crimes. (Doc. 18 at 9:7–10). However, in *Brown* the Seventh Circuit concluded that a claim of actual innocence of a sentencing enhancement may be made even though the sentence imposed did not exceed the statutory maximum. *Brown*, 719 F.3d at 588. The undersigned still finds that court's reasoning persuasive.

[3] In fact, Petitioner's case may be more factually similar to *Brown* and *Hill* than *Terry* was because Petitioner is also challenging the application of his career-offender sentencing enhancement.

[4] The Court notes that the petitioner in *Terry* had received a life sentence and "the possibility that Petitioner's sentence [wa]s beyond what [wa]s called for by law raise[d] a fundamental fairness issue and a potential miscarriage of justice corrigible in a § 2241 proceeding." *Terry*, 2017 WL 2240970 at *11. Although the disparity between the sentence issued and the maximum sentence Petitioner could have received if he was sentenced

- 8 -

Petitioner very well may be actually innocent of the career offender sentencing enhancement.

### ii. Unobstructed Procedural Shot to Present Claims

However, even assuming *arguendo* that Petitioner has made a substantial claim of actual innocence, it is clear that he cannot establish that he has not previously had an unobstructed procedural shot to present his claims because *Mathis* in no way announced a new rule applicable to Petitioner's claims. His petition must therefore be dismissed.

"In determining whether a petitioner had an unobstructed procedural shot to pursue his claim, we ask whether [the] petitioner's claim 'did not become available' until after a federal court decision." *Harrison*, 519 F.3d at 960 (quoting *Stephens*, 464 F.3d at 898). "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). In deciding whether a petitioner had an unobstructed procedural shot to pursue his claim, the court considers: (1) whether the legal basis for the petitioner's claim arose after he had exhausted his direct appeal and first § 2255 motion; and (2) whether the law has changed in any way relevant to the petitioner's claim after that first § 2255 motion. *Harrison*, 519 F.3d at 960.

#### A. The legal basis for Petitioner's claim existed prior to his direct appeal and first § 2255 petition

"An intervening court decision must 'effect a material change in the applicable law' to establish unavailability." *Alaimalo*, 645 F.3d at 1047 (quoting *Harrison*, 519 F.3d at 960). By contrast a decision that merely further clarifies the statute of conviction without materially varying the statutory construction set forth in prior case law does not affect such a change. *Id.* at 1048. It is clear to this Court that *Mathis* effected no material change in the law as it stood prior to Petitioner's sentencing in 2003 and his first § 2255 petition in 2013.

In *Mathis*, the Supreme Court analyzed the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the 15-year mandatory minimum sentence imposed on federal

---

without the career offender enhancement is minimal in this case (2 months), Petitioner still would have been sentenced to a term of imprisonment for which he was ineligible.

defendants who have three previous convictions for violent felonies or serious drug offenses, or both. Under the ACCA, any crime punishable by more than a year in prison is a violent felony if it falls under one of three categories, including the "enumerated crimes" of "burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court in *Mathis* considered whether the sentencing court had properly concluded that the defendant's prior convictions under Iowa's burglary statute qualified as an "enumerated crime" and could therefore be used to enhance his sentence. 136 S. Ct. at 2248. In doing so, the Court decided whether the elements of the state crime (Iowa burglary) corresponded to those of the generic offense (generic burglary). *Id.* at 2250. The Court held that it did not by employing the categorical approach and finding that the Iowa burglary statute covers a "greater swath of conduct than the elements of the relevant ACCA offense (generic burglary)." *Id.* at 2251. Simply put, a "prior crime qualifies as a[] . . . predicate if, but only if, its elements are the same as or narrower than, those of the generic offense." *Id.* at 2247.

The Court declared no new conception of the categorical or modified categorical approach in *Mathis*. Indeed, the Court explicitly stated that it was not effectuating a new legal rule, but rather using its own precedents to decide whether an exception to the already established law existed:

> For more than 25 years, our decisions have held that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense. The question in this case is whether ACCA makes an exception to that rule when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements. We decline to find such an exception.

136 S. Ct. at 2247–48. The Court further explained,

> Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements . . . whether for good or for ill, the elements-based approach remains the law. And we will not introduce inconsistency and arbitrariness into our ACCA decisions by here declining to follow its requirements.

*Id.* at 2257. The Supreme Court first established the categorical and modified categorical

approaches described in detail and heavily relied upon in *Mathis* almost thirty years ago in *Taylor v. United States*, 495 U.S. 575 (1990). Therefore, because of this reliance and the repeated explanation that the *Mathis* Court was merely following its own precedent in deciding the case, subsequent circuit court decisions, including the Ninth Circuit, have affirmed that *Mathis* announced no new rule of law, but merely clarified its existing precedent. *See Arazola-Galea v. United States*, 876 F.3d 1257, 1259 (9th Cir. 2017) ("Our subsequent decisions have confirmed the notion that *Mathis* is a clarification of existing rules rather than a new rule itself. . . . We now join our sister circuits in definitively holding that *Mathis* did *not* establish a new rule of constitutional law."); *see also Yates v. United States*, 842 F.3d 1051, 1052 (7th Cir. 2017); *United States v. Taylor*, 672 F. App'x 860, 864 (10th Cir. 2016).

Here, it is clear that Petitioner had an unobstructed procedural shot to raise his claim challenging the application of the career-offender sentencing enhancement at least at the time of his first § 2255 petition, if not sooner. Petitioner claims that his prior state conviction for possession of a controlled substance with intent to sell (cocaine) under Nev. Rev. Stat. § 453.337[5] is no longer a predicate offense under U.S.S.G. § 4B1.1 in light of *Mathis*. This claim is based on Petitioner's assertion that Nev. Rev. Stat. § 453.337 "does not qualify as a controlled substance offense under the categorical approach [because it] criminalizes a broader range of conduct than a controlled substance offense as defined in the federal guidelines." (Doc. 7 at 4). Petitioner may even be correct about this assertion.[6]

---

[5] Nev. Rev. Stat. § 453.337 prohibits the "possess[ion] for the purpose of sale . . . any controlled substance classified in schedule I or II."

[6] The Ninth Circuit has already found that conviction under Nev. Rev. Stat. § 453.337 is not a categorical match to the federal Controlled Substances Act ("CSA") that automatically qualifies as a predicate drug offense because it criminalizes the possession of a larger number of drugs than the CSA. *United States v. Figueroa-Beltran*, 892 F.3d 997, 1002–03 (9th Cir. 2018). However, the question of whether § 453.337 is "divisible" was not answered. *Id.* at 1003–04. The court noted that there was "no controlling Nevada precedent definitively resolving whether or not § 453.337 is a divisible statute." *Id.* at 1003. Instead, the Ninth Circuit certified the question to the Nevada Supreme Court of "whether § 453.337 is divisible as to the identity of a controlled substance." *Id.* at 1004. Here, Petitioner conceded that the Nevada Supreme Court determined that § 453.337 is indivisible, but the Court finds no record of such a determination. (Doc. 25 at 4–7). This concession seems to be based on Respondent's assertion that *Muller v. Sheriff*, 93 Nev. 686 (1977) settles this issue and that § 453.337 is indivisible. (Doc. 18 at 11–12). However, that argument was rejected by the Ninth Circuit in *Figueroa-Beltran* because there is

However, the existence of this argument predates the Supreme Court's decision in *Mathis* and definitively existed at the time of Petitioner's first § 2255 petition in 2013.[7] As explained by the Court in *Mathis*, that case was resolved entirely by the Court's precedent and held that the elements-based approach is still alive and well. 136 S. Ct. at 2257.

Accordingly, the Court concludes that Petitioner did have an unobstructed procedural shot at presenting his actual innocence claim at the time of his first § 2255 motion and, for that reason, he may not now raise that claim in a § 2241 petition. Therefore, Petitioner has not successfully established that he has satisfied the requirements of the escape hatch.

### III. DISMISSAL

For the reasons stated above, Petitioner may only bring his claim in a § 2255 motion because the escape hatch is unavailable to him. Because § 2255 motions must be filed in the district where the Petitioner was sentenced, this Court is without jurisdiction to hear a recharacterized § 2255 motion. *See* 28 U.S.C. § 2255(a); *Muth v. Fondren*, 676 F.3d 815, 818 (9th Cir. 2012). Petitioner is serving a sentence imposed by the United States District Court for the Central District of California and therefore must file a § 2255 petition with that court. Thus, this Court must decide whether to dismiss the petition or transfer it to the Central District of California. *See* 28 U.S.C. § 1631. Transfer is appropriate if three conditions are met: "(1) the transferring court lacks jurisdiction; (2) the transferee could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (citing *Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989)). Here, as discussed above, the first factor is met, but the other two are not.

Because this is a subsequent § 2255 petition, the District Court for the Central

---

conflicting state law. 892 F.3d at 1003. Therefore, as the Nevada Supreme Court has still not issued an opinion on the certified question, it is still unsettled whether Nev. Rev. Stat. § 453.337 may satisfy the "modified" categorical approach.

[7] The Court notes that Petitioner seems to assert that *Mathis* is relevant to his claim because "sale" under Nev. Rev. Stat. § 453.337 can be satisfied through alternative means and *Mathis* discussed the fact that the modified categorical approach may not be used to explore the different factual bases for a conviction, but merely elements. However, as previously discussed, that argument existed prior to the Supreme Court's decision in *Mathis*.

District of California could not have exercised jurisdiction over this petition at the time the action was filed. Instead, Petitioner would first need to seek Ninth Circuit authorization to file the subsequent § 2255 petition, which he has not done. *See* 28 U.S.C. § 2255(h); *Harrison*, 519 F.3d at 955. Since the Central District of California could not have exercised jurisdiction over the claim, the second condition for transfer is not met. The third condition is also not met. Because the transferee court would not be able to exercise jurisdiction over the instant Petition, transfer of the case would not further the interests of justice. Therefore, dismissal of the instant § 2241 petition is warranted.[8]

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** dismissing Petitioner's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 for lack of jurisdiction. (Doc. 7). The Clerk of Court must enter judgment accordingly and shall close this case.

Although Petitioner has brought his claims in a § 2241 petition, a certificate of appealability is required where a § 2241 petition attacks the petitioner's conviction or sentence. *See Porter v. Adams*, 244 F.3d 1006, 1007 (9th. Cir. 2001). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, in the event Petitioner files an appeal,

---

[8] Some circuit courts have ruled that if a petitioner erroneously files a motion for leave to file a second or successive § 2255 petition in the district court or if a petitioner actually files a second or successive § 2255 petition in the district court without first having obtained circuit court authorization, then the district court has the option of transferring the motion or petition to the proper court of appeals. *See In re Cline*, 531 F.3d 1249, 1252 (10th Cir. 2008); *Jones v. Braxton*, 392 F.3d 683, 691 (4th Cir. 2004); *Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002); *Boyd v. United States*, 304 F.3d 813, 814 (8th Cir. 2002) (per curiam); *United States v. Barrett*, 178 F.3d 34, 41 n.1 (1st Cir. 1999). Two circuit courts mandate such a transfer. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996). While not explicitly expressing an opinion on the issue, the Ninth Circuit has seemingly determined that transfer of a petition is not mandatory. *See Hernandez v. Campbell* 204 F.3d 861, 866 (9th Cir. 2000) (per curiam) (directing the custodial court to dismiss the § 2255 petition as a secondary or successive filing if that court decided that the savings clause did not apply). The Tenth Circuit has articulated certain factors that district courts should consider in deciding whether to transfer a motion or petition to the circuit court including "whether the claims alleged are likely to have merit." *In re Cline*, 531 F.3d at 1252. Here, this Court is not required to transfer this successive § 2255 petition to the Ninth Circuit. Furthermore, for the reasons stated above, it is unlikely that Petitioner's claims have merit given the lack of any new law in *Mathis*. Therefore, this Court will also not transfer this petition to the Ninth Circuit for consideration.

- 13 -

the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 9th day of September, 2019.

_____
Eric J. Markovich
United States Magistrate Judge